[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 76 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 77 
If Mrs. Stryker, the mortgagee, had been the plaintiff, and had sought to enforce against the defendant Hughes the liability which is insisted upon by the present plaintiff, the case ofKing v. Whitely (10 Paige, 465) would have been precisely in point to show that she could not prevail. If there is any distinction between the cases, the one cited is stronger for the pretensions of the mortgagee than the one under review. There the party seized of the equity of redemption had conveyed the mortgaged premises to the defendants, subject to the mortgages thereon, and the *Page 78 
conveyance recited that the grantees assumed the payment of such mortgages, and were to pay them off as a part of the consideration of the conveyance; while in this case there is no undertaking in terms, by the defendant, either in the preliminary contract or in the conveyance, to pay off the mortgage. All that is said is, that the conveyance is subject to the mortgage, and that the latter forms the consideration of the deed. No distinction in principle arises out of the fact that in the case referred to the defendants did not execute the deed, and that in the one under consideration the defendant signed the contract which preceded the conveyance. In this class of cases, the acceptance of a conveyance, containing a statement that the grantee is to pay off an incumbrance, binds him as effectually as though the deed had been inter partes, and had been executed by both grantor and grantee. (Halsey v. Reed, 9 Paige, 446;Curtis v. Tyler, id., 432; Blyer v. Monholland, 2 Sandf.Ch. Rep., 478; Rawson's Administratrix v. Copland, id., 251;Ferris v. Crawford, 2 Denio, 595.) In the case first referred to, as well as in the one now before the court, the grantor was not personally holden to pay the mortgage debt. While he continued to own the equity of redemption, he was interested to have that debt paid, because it was a burthen upon his estate; but when he parted with the land he had no further connection with the mortgage, and was only concerned to have his conveyance contain such expressions as would qualify the general terms of his covenants of title, and protect him from the consequences of an eviction by paramount title derived from the mortgage. The chancellor held, in the case cited, that where a party thus situated conveys the mortgaged premises subject to the mortgage, and the grantee engages to pay it off, such agreement must be construed as a mere declaration that the property was conveyed to him subject to the lien of the mortgage thereon, and that the general covenants of seizin and warranty in the conveyance are not intended to extend to this particular *Page 79 
incumbrance, of which the grantee assumed the payment in case he should wish to retain the title of the lands conveyed to him. We are satisfied that the conclusion is in accordance with the intentions of the parties, and is a sound exposition of the law.
Where a mortgagee is permitted to resort to a subsequent grantee of the mortgaged premises, who has agreed with his grantor to pay off the mortgage, to recover a deficiency after applying the proceeds of the sale, it is by virtue of the doctrine of subrogation in equity, by which the creditor is entitled to all the collateral securities which the debtor had obtained to reënforce the primary obligation. The mortgagor in such a case is looked upon as occupying the position of a surety; while the grantee having undertaken, upon a competent consideration, to pay the debt is regarded as the principal debtor. (Halsey v. Reed, supra.) In this case, C.W. Trotter, after his conveyance to the defendant Hughes, ceased to have any connection with the mortgage debt, and therefore cannot be considered as a surety for its payment; and for this reason the mortgagee could not claim the benefit of any engagements which the defendant may have contracted with him. Mrs. Stryker, the mortgagee in this case, has no title to call upon the defendant Hughes to respond personally for this debt. He would be a necessary party defendant to an action at her suit to foreclose the mortgage, but the only remedy she could ask against him would be that his equity of redemption in the mortgaged premises should be foreclosed and that the land might be sold for the payment of the debt. She would also be entitled to a personal decree for any deficiency against the mortgagor on his bond, but not against the defendant Hughes who had incurred no personal obligation to her, or to any one to whose rights she was entitled to succeed. One objection to the judgment rendered by the supreme court, therefore, is, that it gives to the mortgagee, who is made a defendant, a remedy against Hughes to which she is not entitled, for by *Page 80 
its provisions Hughes is required to pay to her any deficiency of the mortgage debt which may remain after applying thereto the proceeds of the sale of the premises. In effect, the judgment is precisely such as would have been rendered upon a foreclosure suit instituted by her, if it had been determined that the defendant Hughes was liable to her for such deficiency. This is of course in direct hostility to the case of King v. Whitely,
with the principles of which we have expressed our approbation.
Aside from the rights of Mrs. Stryker, there is no ground for sustaining this suit. Hughes was to pay nothing to C.W. Trotter for the land, the sole consideration between them being the mortgage debt due to Mrs. Stryker, in regard to which, as before remarked, Trotter had no interest or concern. If he had brought his suit, instead of assigning the demand to the plaintiff, it would have been impossible for him to show that he had any interest in its determination one way or the other. Indeed, he could have no possible legal or pecuniary motive for instituting such an action, as he would have been a stranger to the subject of the litigation.
The plaintiff, it is true, has a very obvious motive in sustaining a judgment which shifts the personal liability for any deficiency which may arise from his own shoulders upon those of Hughes. His difficulty, however, is, that he has no equitable right to ask for such a transfer of that burthen. Independently of the assignment from C.W. Trotter, he could not require Hughes to stand between him and such a liability, for he neglected to require an engagement to that effect from the person to whom he conveyed the premises. So far as is shown, he rested satisfied that they would sell for sufficient to pay the mortgage debt, and conveyed simply by a quit-claim deed. By the assignment, he acquired no other rights than such as C.W. Trotter had; and we have seen that he had none whatever as against Hughes. He rested satisfied with a statement in his contract and conveyance, *Page 81 
the legal effect of which was, that he would not guarantee against the effect of the mortgage, and that Hughes should himself satisfy it if he wished to protect the land against it. The plaintiff's situation was not, therefore, improved by his assignment.
I am of opinion that the city court of Brooklyn was right in its judgment, by which the complaint was dismissed with costs, and that such judgment should be affirmed and the judgment of the supreme court reversed.
All the judges, except RUGGLES, J., who took no part in the decision, concurred.
Judgment accordingly.